IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-346-D

| | | |
|---|---|---|
| SARAH E. ATWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DJO, INCORPORATED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On July 18, 2008, Sarah E. Atwell ("Atwell" or "plaintiff") filed her complaint [D.E. 1]. In this product liability action, Atwell alleges that she developed chondrolysis in her right shoulder as a result of defectively manufactured pain pumps that her surgeon inserted. Compl. 7–9. On December 22, 2008, Atwell amended her complaint [D.E. 95], adding McKinley Medical, LLC, Moog, Inc. ("Moog"), and Curlin Medical, Inc. ("Curlin") as defendants. On May 3, 2010, Moog and Curlin filed a motion for summary judgment [D.E. 170], claiming they purchased the pain-pump product lines from McKinley Medical, LLC after Atwell's surgery, and that North Carolina law precludes a finding of successor liability. On May 17, 2010, Atwell responded in opposition [D.E. 176]. On May 28, 2010, Moog and Curlin replied [D.E. 181]. As explained below, the court grants Moog and Curlin's motion for summary judgment.

I.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson,

477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

On January 30, 2004, Atwell underwent surgery on her right shoulder. Am. Compl. 4. The surgeon implanted an Accufuser pain pump into Atwell's shoulder to deliver pain medication directly into the shoulder joint. Id. at 4. On December 6, 2004, Atwell underwent a second surgery on her right shoulder. Id. at 4. Again, the surgeon implanted an Accufuser pain pump into her shoulder joint. Id. at 5. Atwell developed chondrolysis, causing the loss of cartilage in her shoulder. Id. at 5–6. As a result, she suffered significant pain and disability, culminating in a complete shoulder replacement. Id. at 6.

McKinley Medical, LLC distributed the Accufuser pumps inserted into Atwell's shoulder. Id. at 5; Defs.' Mem. Supp. 3; Pl.'s Resp., Ex. C. On July 14, 2006, Moog and its wholly-owned subsidiary Curlin entered into an "agreement and plan of merger" with McKinley Medical, LLC and its newly formed subsidiary McKinley Medical Corp. Pl.'s Resp., Ex. E at 1. Under the terms of the agreement, McKinley Medical, LLC would transfer its Accufuser and beeLINE pain-pump product lines to McKinley Medical Corp., who in turn would merge with Curlin. Id. at §§ 2.1–2.3. Curlin agreed to "continue at least one significant historic business line" of McKinley Medical Corp., id. at § 4.6, and McKinley Medical, LLC agreed to indemnify Moog and Curlin for any liability arising from pain pumps manufactured or sold before the deal's closing date. Id. at § 8.2. During the due diligence period, McKinley Medical, LLC disclosed to Moog and Curlin that in early 2006, it had received a single report from a Canadian distributor regarding chondrolysis. Leonard Dep. 42–43. However, no litigation or claim based on the use of the pain pumps was pending when the

2

parties executed the merger agreement. Id. at 50.

On August 23, 2006, McKinley Medical, LLC executed an agreement with McKinley Medical Corp. conveying all tangible and intangible assets related to the Accufuser and beeLINE pain-pump product lines to McKinley Medical Corp. Pl.'s Resp., Ex. D. McKinley Medical, LLC also conveyed certain liabilities, such as accounts payable and other contractual obligations. Id. Thereafter, Curlin merged with McKinley Medical Corp., acquiring the Accufuser and beeLINE pain-pump product lines, and McKinley Medical Corp. ceased to exist. Defs.' Mem. Supp., Ex. 3. Curlin then transferred the business operations of the newly acquired product lines to its headquarters in California and hired twelve employees and consultants from McKinley Medical, LLC. See Olivieri Dep. 37–38. However, the manufacturing companies, suppliers, and customers remained the same. Id.; Hoffman Dep. 188–89. Following the sale of Accufuser and beeLINE product lines to Curlin, McKinley Medical, LLC continued to sell its Walkmed pain pump until it sold that product line in May 2007. Pl.'s Resp. 7; Leonard Dep. 22. Although McKinley Medical, LLC no longer conducts commercial business, it remains a corporate entity. Pl.'s Resp. 7; Leonard Dep. 46.

II.

As a general rule, an asset purchase does not create successor liability in the purchasing corporation under North Carolina law. See, e.g., Becker v. Graber Builders, Inc., 149 N.C. App. 787, 791, 561 S.E.2d 905, 909 (2002). However, this general rule does not apply if:

> (1) there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) the transfer amounts to a de facto merger of the two corporations; (3) the transfer of assets was done for the purpose of defrauding the corporation's creditors, or; (4) the purchasing corporation is a 'mere continuation' of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers.

Budd Tire Corp. v. Pierce Tire Co., 90 N.C. App. 684, 687, 370 S.E.2d 267, 269 (1988). A lack of adequate consideration or a good faith purchaser for value are additional factors used to determine whether the fraudulent sale or the "mere continuation" exceptions apply. Id., 370 S.E.2d at 269. A corporate successor is a "mere continuation" of its predecessor "if only one corporation remains

3

after the transfer of assets and there is identity of stockholders and directors between the two corporations." G.P. Publ'ns v. Quebecor Printing-St. Paul, Inc., 125 N.C. App. 424, 434, 481 S.E.2d 674, 680 (1997). North Carolina courts have refused to broaden liability and therefore rejected consideration of other factors under the "substantial continuity" or "continuity of enterprise" tests. Id. at 434–36, 481 S.E.2d at 680–81. Instead, North Carolina courts emphasize the "continuity of stockholders and directors between the selling and purchasing corporation." Id. at 434, 481 S.E.2d at 680.

Moog and Curlin contend that their acquisition of the Accufuser and beeLINE product lines was nothing more than an asset purchase that cannot establish successor liability. Atwell responds that all four exceptions to the general prohibition on successor liability apply in this case. The court examines each argument seriatim.

First, Atwell contends Moog and Curlin implicitly agreed to assume liability for pumps that McKinley Medical, LLC sold before the transaction closed. Pl.'s Resp. 16–17. In support, Atwell cites the indemnification provision in the merger agreement in which McKinley Medical, LLC agrees to indemnify Curlin and its affiliates for any damages arising out of products manufactured or sold before the closing date. See Defs.' Mem. Supp., Ex. 3 at § 8.2. However, the merger agreement identified what liabilities were transferred to McKinley Medical Corp. and subsequently assumed by Curlin and does not include the alleged liability at issue in this case. See id. §§ 1.1, 2.2, scheds. 1.1(c), 1.1(f). Furthermore, the assignment agreement between McKinley Medical, LLC and McKinley Medical Corp. explicitly excludes all other liabilities. Pl.'s Resp., Ex. D at 1. Thus, the indemnification provision in the merger agreement actually supports, rather than undermines, a finding that the parties did not intend Curlin or Moog to assume the alleged liability at issue in this case. Accordingly, the first exception does not apply.

Second, Atwell contends the transfer of the product lines amounted to a de facto merger of the two corporations. See Pl.'s Resp. 10–13, 17–18. "No North Carolina decision has applied the

4

de facto merger doctrine . . . ." Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 25.04 (7th ed. 2009). Moreover, Atwell concedes that most courts "combine their analysis" of the de facto merger exception with the mere continuation exception. Pl.'s Resp. 11. Sitting in diversity, the court declines to expand North Carolina common law. See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314–15 (4th Cir. 2007). Thus, the court declines to find that the transfer amounts to a de facto merger.

Third, Atwell contends that the transactions were fraudulently structured to avoid the liability of potential claimants alleging McKinley Medical, LLC's pain pumps caused their chondrolysis. See Pl.'s Resp. 16, 19–23. However, Atwell has presented no evidence suggesting any party to the transactions had knowledge of future litigation involving the two pain-pump product lines. Although McKinley Medical, LLC disclosed one adverse report regarding chondrolysis during the due diligence period, the structure of the transactions did not change as a result, and no litigation was pending at any point during the relevant period. Thus, the parties did not structure the transactions to avoid any known, specific liability. Moreover, Moog and Curlin paid adequate consideration for the pain-pump product lines, and Moog and Curlin were good faith purchasers for value. See Budd Tire Corp., 90 N.C. App. at 687, 370 S.E.2d at 269. Thus, the third exception does not apply.

Finally, Atwell contends that Moog and Curlin are a "mere continuation" of McKinley Medical, LLC. Pl.'s Resp. 11–16, 18–19. In support, Atwell spends significant time discussing the factors relevant to the "continuity of enterprise" and "substantial continuity" tests. See Pl.'s Resp. 15–16, 18–19. However, North Carolina courts have explicitly rejected those tests. See, e.g., G.P. Publ'ns, 125 N.C. App. at 434–36, 481 S.E.2d at 680–81. Moreover, United States v. Carolina Transformer Co., 978 F.2d 832, 838 (4th Cir. 1992), does not hold otherwise. In Carolina Transformer, the Fourth Circuit was applying federal common law, not North Carolina law. Id. Thus, in accordance with how North Carolina appellate courts have applied the fourth exception, this

5

court focuses on similarities in the identity of directors and shareholders, and whether adequate consideration was paid by a good faith purchaser for value. See, e.g., G.P. Publ'ns, 125 N.C. App. at 434, 481 S.E.2d at 680. Atwell has presented no evidence that a continuity of directors and shareholders exists between McKinley Medical, LLC and Moog or Curlin. Furthermore, the evidence demonstrates (and Atwell concedes) that two independent corporations continued to exist and conduct business following the transaction. See Pl.'s Resp. 7; Leonard Dep. 22. In addition, as mentioned, Moog and Curlin were a good faith purchaser who paid adequate consideration. Thus, the fourth exception does not apply.

In sum, the record demonstrates that Atwell's theory of successor liability fails. Although courts "must not elevate form over substance" and instead must "look to the substance of the transaction to determine its true nature," G.P. Publ'ns, 125 N.C. App. at 434, 481 S.E.2d at 679–80, the substance of the transactions at issue in this case was a mere asset purchase from McKinley Medical, LLC. No rational jury could conclude otherwise. Accordingly, the general rule barring successor liability applies, and the court grants summary judgment to Moog and Curlin.

III.

As explained above, the court GRANTS defendants Moog, Inc. and Curlin Medical, Inc.'s motion for summary judgment [D.E. 170]. Defendants Moog, Inc. and Curlin Medical, Inc. are DISMISSED as defendants.

SO ORDERED. This 18 day of March 2011.

JAMES C. DEVER III
United States District Judge